## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:18-cr-00317-YK |
| v. : | |
| : | (Judge Kane) |
| BRIAN D. SHEAFFER, : | |
| Defendant : | |

### MEMORANDUM

Presently before the Court is Defendant Brian D. Sheaffer ("Defendant")'s "motion to convert custodial sentence to home confinement with electronic monitoring." (Doc. No. 54.) Having been fully briefed (Doc. Nos. 55, 57, 58), Defendant's motion is ripe for disposition. For the reasons that follow, the Court will: (1) deny Defendant's motion without prejudice to the extent it seeks compassionate release pursuant to 18 U.S.C. § 3582; (2) deny Defendant's motion to the extent it seeks review by this Court of the BOP's denial of Defendant's request for compassionate release; and (3) direct the Clerk of Court to open a corresponding civil action and docket Defendant's motion seeking home confinement as a motion for a petition of writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.  BACKGROUND**

On February 5, 2020, the Court sentenced Defendant to a term of imprisonment twenty-four (24) months, following Defendant's conviction for mail fraud in violation of 18 U.S.C. § 1341. (Doc. No. 51.) Defendant is currently housed at the Federal Correctional Institution Schuylkill ("FCI Schuylkill"), with a projected release date of November 16, 2021. On May 22, 2020, Defendant filed the instant motion as a result of the global COVID-19 pandemic, arguing that he should be permitted to serve the remainder of his sentence in home confinement because he "is 58 years old and has an underlying medical condition of poorly controlled diabetes

mellitus[] and is considered a high risk individual for exposure to COVID-19." (Doc. No. 54 at 2.) Defendant maintains that he "is particularly vulnerable and at considerable risk if exposed to COVID-19, and the conditions at FCI Schuylkill heighten [his] risk of serious illness[] or death." (Id. at 3.) In light of such concerns, Defendant previously submitted a counseled letter to the Warden of FCI Schuylkill requesting release from custody, which reads, in pertinent part, as follows:

> I write to urge you to release my client, Brian Sheaffer (# 76568-067) to home confinement immediately, pursuant to the directive issued by Attorney General William Barr.
>
> Mr. Sheaffer is 58 years old, and thus is extremely vulnerable to severe illness and possible death from COVID-19 if exposed. Moreover, Mr. Sheaffer was diagnosed with diabetes in 2018, which places him at a heightened risk of severe illness if exposed to COVID-19. . . . Allowing Mr. Sheaffer to be placed on home confinement significantly decreases his risk of serious illness, and decreases the risk of spread of COVID-19.
>
>  . . .
>
> If released on home confinement, Mr. Sheaffer would go immediately to his long-time home . . . . There, Mr. Sheaffer would be able to follow CDC guidelines for self-quarantine and social distancing practices. Attorney General Barr has recognized the risk of spread within the prison systems and has expanded authority to release inmates to home confinement, even if they are not near their release date. Mr. Sheaffer is part of the vulnerable community with the potential of suffering serious illness if he becomes exposed to the virus.

(Doc. No. 54-2 at 1-2) (footnotes omitted).

Subsequent to counsel sending this letter, Defendant filed the instant motion on May 22, 2020, asserting that more than thirty (30) days had passed since his letter was sent to the Warden. (Doc. No. 54 at 3.) The Warden eventually responded to Defendant's written request on May 27, 2020, and in doing so, stated that:

> This is in response to your correspondence regarding inmate SHEAFFER, Brian, Reg. No. 76568-067, an inmate presently confined at the Schuylkill Federal Satellite Camp. Specifically, you have requested Mr. Sheaffer be considered for

direct home confinement as a result of the recent pandemic spread of the Novel Coronavirus Disease (COVID-19). Further, you indicated he is in a high-risk category for serious illness or death from COVID-19, as he has been diagnosed with diabetes.

The BOP is taking extraordinary measures to contain the spread of the Coronavirus and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. Currently, section 12003(b) (2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") grants discretion to the BOP to place inmates on home confinement for a longer term under 18 U.S.C. 3624(c) (2). The BOP's discretion is guided by criteria listed in memoranda from the Attorney General.

According to Mr. Sheaffer's most recent medical review, he is currently stable with a good prognosis. Mr. Sheaffer is currently able to independently adapt to activities of daily living and is able to perform self-maintenance activities in a correctional environment.

As you are aware, this disease is considered a pandemic, affecting us worldwide and, as such, there is no area without risk of contracting this disease. It should be noted at this time, FCI Schuylkill does not have any confirmed COVID-19 staff or inmate cases. Additionally, Mr. Sheaffer has not served fifty percent of his sentence and his intended release residence is located in an area which has a significant level of COVID-19 infection as per CDC statistics.

Accordingly, your request for direct home confinement for Mr. Sheaffer is denied.

(Doc. No. 57-1 at 1-2.) While Defendant's request to the Warden and the response from the Warden address home confinement, the instant motion appears to request both home confinement and compassionate release. (Doc. No. 54.) Accordingly, the Court addresses the motion as it pertains to both requests herein.

## II. LEGAL STANDARD

### A. Compassionate Release

Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence where extraordinary and compelling reasons justify a sentence reduction. See First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (2018). As

amended by the First Step Act, the relevant statutory provision reads, in pertinent part, as follows:

> (c) **Modification of an imposed term of imprisonment**.—The [C]ourt may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the [C]ourt, upon motion of the Director of the Bureau of Prisons, <u>or upon motion of the defendant</u> after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

"The First Step Act applies the same statutory requirements to a defendant's motion for compassionate release as previously applied, and still apply, to motions by the Director [of the Bureau of Prisons ("BOP")]: 'extraordinary and compelling reasons' must warrant the reduction, the [C]ourt must consider the § 3553(a) factors, and the reduction must be 'consistent' with any 'applicable' policy statements issued by the Sentencing Commission." <u>United States v. Beck</u>, No. 1:13-cr-186, 2019 WL 2716506, at *5 (M.D.N.C. June 28, 2019) (citing 18 U.S.C. § 3582(c)(1)(A)(i). The statute itself does not define "extraordinary and compelling reasons"; however, the United States Sentencing Commission is authorized to promulgate a definition. See <u>United States v. Handerhan</u>, No. 1:10-cr-00298, 2019 WL 1437903, at *1 (M.D. Pa. Apr. 1,

2019) (citing 28 U.S.C. § 994(t)). Application Note 1 to the United States Sentencing Guidelines Section 1B1.13 defines "extraordinary and compelling reasons" as follows:

> 1. Extraordinary and Compelling Reasons. – Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) Medical Condition of the Defendant. –
>>
>>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>>
>>> (ii) The defendant is –
>>>
>>>> (I) suffering from a serious physical or medical condition,
>>>>
>>>> (II) suffering from a serious functional or cognitive impairment, or
>>>>
>>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>>
>> (B) Age of the Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>>
>> (C) Family Circumstances. –
>>
>>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>>
>>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons. – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG, § 1B1.13 n.1.

Although the First Step Act allows defendants to petition a court for compassionate release, 18 U.S.C. § 3582(c)(1)(A) still imposes a requirement that defendants fully exhaust administrative remedies before seeking judicial review. See 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant must "exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or, in the alternative, must wait for "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." See id. The Third Circuit Court of Appeals has held that, despite the unique concerns posed by COVID-19, defendants seeking compassionate release must still comply with this requirement and, therefore, exhaust their administrative remedies before seeking compassionate release from the Court. See United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (noting that defendants "must at least ask the Bureau of Prisons (BOP) to [file a motion] on their behalf and give BOP thirty days to respond"). Numerous other courts have similarly denied motions for compassionate release for failure to exhaust administrative remedies. See, e.g., United States v. Zywotko, No. 2:19-cr-113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020) (denying motion for compassionate release for failure to exhaust administrative remedies); United States v. Garza, No. 18-cr-1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) (same); United States v. Eberhart, No. 13-cr-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (same).

**B.     Home Confinement**

The BOP "maintains the discretion to determine whether to transfer an inmate to home confinement." See United States v. Pressley, No. 07-cr-974, 2009 WL 1687501, at *1 (D.N.J. June 15, 2009) (citing 18 U.S.C. § 3624(c)). "Section 602 of the First Step Act, . . . codified at 18 U.S.C. § 3624(c)(2), 'allows the [BOP] to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months and [it] instructs BOP, to the extent practicable, to place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.'" United States v. Cruz, __ F. Supp. 3d __, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020) (internal quotation marks omitted) (alterations in original) (quoting United States v. Carr, Nos. 18-cv-1681-WJM, 16-cr-054-WJM-1, 2020 WL 1815910, *1 (D. Co. April 10, 2020)). "The CARES Act in turn then provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020 [as a result of the COVID-19 pandemic], the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. § 3624(c)(2)." Id. Courts evaluating motions for release to home confinement as a result of COVID-19, however, have also treated such motions as motions filed pursuant to 28 U.S.C. § 2241 because they challenge the nature or length of one's confinement. See, e.g., United States v. Ashby, No. 3:20-cv-0789, 2020 WL 2494679, at *3 (M.D. Pa. May 14, 2020) (remarking that there is "[n]o doubt that a habeas petition under § 2241 is the proper vehicle for an inmate to challenge 'the fact or length of confinement' . . . or the 'execution' of his confinement" (internal citations omitted)). "When a petitioner seeks immediate release from custody, the sole federal remedy lies in habeas corpus." Id. (internal quotation marks omitted)

7

(quoting Camacho Lopez v. Lowe, ___ F.3d ___, 2020 WL 1689874, *8 (M.D. Pa. Apr. 7, 2020)).

## III. DISCUSSION

### A. Defendant's Request for Compassionate Release

#### 1. Arguments of the Parties

In support of his motion—which he styles as a "motion to convert custodial sentence to home confinement with electronic monitoring" (Doc. No. 54)—Defendant cites the statutory provision governing compassionate release, 18 U.S.C. § 3582, for the general proposition that the Court "may modify a term of imprisonment if 'extraordinary and compelling reasons warrant such a reduction'" (Doc. No. 55 at 2) (quoting 18 U.S.C. § 3582(c)(1)(A)). According to Defendant, his letter to the Warden suffices to permit him to satisfy the exhaustion requirement (id.), and the possibility of a COVID-19 outbreak at his place of incarceration warrants granting him relief (id. at 5-10). Specifically, Defendant cites factors that cause COVID-19 to spread easily in a prison environment, and states that he: "is at serious risk if he is exposed to COVID-19"; "is not likely to reoffend"; is incarcerated due to a non-violent offense; and "is willing to adhere to any home confinement conditions" imposed by the Court. (Id. at 10.)

In opposition, the Government argues that Defendant's motion should be denied as to his request for compassionate release because "Defendant failed to request compassionate release from the BOP, and therefore, because of his failure to exhaust administrative remedies, the Court is without authority to consider the present request." (Doc. No. 57 at 1.) The Government states that while Defendant asks "this Court to convert his sentence to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A), i.e.[,] the compassionate release statute . . . [t]his provision requires [] Defendant to first pursue compassionate release through the BOP, which [] Defendant failed to

8

do." (Id. at 19.) The Government further posits that this statutory provision "does not authorize a sentencing court to convert a sentence from incarceration to home confinement." (Id.)[1] As to the requirement of "extraordinary and compelling reasons" for purposes of compassionate release, the Government states that one "must satisfy the procedural requirements for review" before the Court may examine whether such circumstances are present (id. at 21), stating that in this case, "Defendant has asked this Court to provide immediate release to home confinement via 18 U.S.C. § 3582(c)(1)(A), even though [he] has failed to properly request relief from the BOP[,]" which compels the conclusion that Defendant's motion should be denied for lack of exhaustion in light of precedent indicating that exhaustion may not be excused (id. at 25).[2]

In reply, Defendant argues that the Government's position regarding the exhaustion requirement for compassionate release is inaccurate because, although his request to the Warden "did not contain statutory language[,] . . . [o]ther [c]ourts, when discussing whether or not a defendant must resubmit a request to update the COVID-19 requirement, have noted that 'the reasons presented to the warden [need not] mirror those presented to the district court.'" (Doc. No. 58 at 2-3) (citing United States v. Brown, No. 4:05-cr-00227-1, 2020 WL 2091802, at 3 (S.D. Iowa Apr. 29, 2020)).[3] More specifically, Defendant states that:

---

[1] The Court addresses the Government's other related arguments in the portion of this Memorandum pertaining to Defendant's request for home confinement infra.

[2] The Government also asserts that, should the Court reach the merits of Defendant's request for compassionate release, the request should be denied because Defendant has not demonstrated that "extraordinary and compelling" reasons warrant release and the relevant Section 3553(a) factors do not weigh in favor of granting Defendant's request. (Doc. No. 57 at 25-26.) In light of the Court's conclusion regarding exhaustion, however, the Court will not address the merits of Defendant's request for compassionate release at this time.

[3] The Court observes that a significant portion of Defendant's reply brief is devoted to whether Defendant has satisfied the requirement that his motion be filed either after the BOP's denial of his request or thirty (30) days after the Warden's receipt of the request, whichever is earlier. (Doc. No. 58 at 1-2.) The Court declines to address the merits of such an argument herein because, as illustrated by the Government in its opposing brief, after the instant motion was filed,

9

> The Statute does not require that it be cited in the request to the Warden. The letter sent to the Warden (attached to Mr. Sheaffer's original Motion (Doc. 54)) was clear in the request to release Mr. Sheaffer due to the pandemic. The Government is splitting hairs and trying to confuse the issue when it asserts that the request did not specifically mention the phrase "compassionate release." The request to the Warden was more than sufficient to satisfy the statutory requirement.

(Id. at 3.) Defendant also reiterates the arguments advanced in his earlier brief regarding the risk to inmates at FCI Schuylkill posed by the pandemic, stating that "[t]he conditions at FCI Schuylkill absolutely place [him] in imminent risk of serious bodily harm or death." (Id.)

### 2. Whether Defendant's Request for Compassionate Release Should Be Granted

Upon review of the record in accordance with the applicable legal standard, the Court will deny the portion of Defendant's motion seeking compassionate release without prejudice to Defendant's ability to renew this request after properly exhausting his administrative remedies. As explained previously, Defendant's request to the Warden pertained only to home confinement, as demonstrated by the text of the letter and the Warden's response. (Doc. Nos. 54-2, 57-1.) Accordingly, the record before this Court does not include a determination by the BOP specifically as to compassionate release. (Doc. No. 57-1.) While Defendant asserts in his briefing that his request to the Warden omitted only "statutory language" pertaining to compassionate release (Doc. No. 58 at 2-3), Defendant fails to address the fact that his request to the Warden did not reference or concern compassionate release at all (Doc. No. 58). In light of the authority described above emphasizing the importance of the exhaustion requirement—particularly in the context of the COVID-19 pandemic—the Court finds it proper to deny Defendant's motion without prejudice as it pertains to compassionate release for lack of

---

the Warden issued a response denying Defendant's request, thus obviating the need for any discussion of whether Defendant meets the thirty (30)-day requirement noted supra.

10

exhaustion.  See Raia, 954 F.3d at 597 (emphasizing the importance of the BOP's role in evaluating a request for compassionate release in the context of COVID-19); see also, e.g., United States v. Davis, No. 7:17-cr-1, 2020 WL 261461, at *1 (E.D. Ky. May 22, 2020) (distinguishing between a request for home confinement with the Court following such a request to the BOP and a request for compassionate release); United States v. Darcy, No. 1:17-cr-00036, 2020 WL 2573251, at *3 (W.D.N.C. May 21, 2020) (stating that the relevant communications cited by the defendant "relate to the Defendant's request for a release to home confinement under the CARES Act, not to a request for compassionate release pursuant to § 3582(c)(1)(A)(i)[,]" and that, as a result, "[t]here is nothing in the record before this Court to indicate that the [d]efendant has submitted a request for compassionate release to the warden of his [BOP] facility or that he has otherwise exhausted his administrative remedies with respect to BOP's failure to bring such a motion on his behalf").  Accordingly, the Court will deny Defendant's motion as to compassionate release pursuant to 18 U.S.C. § 3582 without prejudice for failure to exhaust.

      **B.**     **Defendant's Request for Home Confinement**

            **1.**     **Arguments of the Parties**

As to his request for home confinement, Defendant makes largely the same arguments advanced in support of his request for compassionate release.  (Doc. No. 55.)  In opposition, the Government states that Defendant's request that this Court order home confinement lacks merit because "[t]his Court lacks authority to override the BOP's discretionary decision" as to home confinement.  (Doc. No. 57 at 27.)  The Government states that because Defendant's request for home confinement "seeks to alter only the place of his confinement, not the actual term of incarceration, only [the] BOP may grant or deny his request[,]" and "[n]othing about the CARES Act changes this exclusive authority."  (Id. at 27.)  According to the Government, therefore,

because the determination as to home confinement "is committed exclusively to the BOP's determination," Defendant is not entitled to the requested relief. (Id. at 29.) Defendant's reply brief does not appear to address these points specifically, but, rather, takes issue with the BOP's denial from a substantive standpoint by asserting primarily that he is suitable for home confinement in light of his non-violent history and heightened vulnerability with respect to COVID-19. (Doc. No. 58 at 4-6.)

### 2. Whether Defendant's Request for Home Confinement Should Be Granted

Upon review of Defendant's motion, the parties' arguments, and the applicable law, the Court will deny the portion of Defendant's motion that seeks review of the BOP's denial of his request for home confinement and construe Defendant's motion as a motion filed pursuant to 28 U.S.C. § 2241. As an initial matter, it is well settled that the determination as to an inmate's eligibility for home confinement lies in the discretion of the BOP. See, Pressley, 2009 WL 1687501, at *1 (citing 18 U.S.C. § 3624(c)); see also Cordaro v. Finley, No. 3:10-cr-75, 2020 WL 2020 WL 2084960, at *6 (M.D. Pa. Apr. 30, 2020) (stating that "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the [BOP]" (first and second alterations in original) (quoting Cruz, 2020 WL 1904476, at *4)). As evidenced by the recitation of Defendant's arguments supra, Defendant ultimately takes issue with the fact that the Warden denied his request for home confinement (Doc. Nos. 55, 58), and Defendant offers no authority to contradict that cited by the Government in support of its view that the BOP's determination is not judicially reviewable (Doc. No. 58). Accordingly, the Court will deny Defendant's motion to the extent it seeks review of the BOP's home confinement determination by this Court.

The Court notes, however, that in the context of motions seeking home confinement as a result of COVID-19 and its potential to spread widely in a prison setting, many courts have construed such motions as those filed pursuant 28 U.S.C. § 2241 in light of the manner in which they challenge one's confinement.  See United States v. Moore-Brown, No. 3:17-cr-129, 2020 WL 2306855, at *5 (M.D. Pa. May 8, 2020) (synthesizing authority in support of the proposition that "that emergency petitions for release, based on COVID-19 are properly construed pursuant to 28 U.S.C. § 2241" given that through such a motion, one "seeks relief affecting how his sentence is executed, i.e., serving his sentence in home confinement as opposed to confinement in prison to which he was sentenced" (citing United States v. Serfass, No. 3:15-cr-39, 2020 WL 1874126 (M.D. Pa. Apr. 15, 2020))).  In the instant case, the Court finds such a construction appropriate in light of the existing authority where courts have evaluated motions for home confinement in criminal cases using this approach.  See, e.g., id.  Accordingly, the Court will direct the Clerk of Court to open a new civil action in which Defendant's motion will be deemed a motion filed pursuant to 28 U.S.C. § 2241.[4]

## IV.    CONCLUSION

Based on the foregoing, the Court will: (1) deny Defendant's motion (Doc. No. 54) without prejudice to the extent it seeks compassionate release pursuant to 18 U.S.C. § 3582; (2) deny Defendant's motion to the extent it seeks review by this Court of the BOP's denial of

---

[4] The Court also notes, however, that neither party appears to have addressed the applicability of 28 U.S.C. § 2241, and, consequently, out of an abundance of caution, will direct briefing on Defendant's request for relief under Section 2241 prior to disposing of the motion.  In addition, the Court notes that venue for this civil action properly lies in this district because Defendant is incarcerated at FCI Schuylkill, which is located within the Middle District of Pennsylvania.  See United States v. Figueroa, 349 F. App'x 727, 730 (3d Cir. 2009) (stating that "[a] petition brought under 28 U.S.C. § 2241 must be filed in the district in which the petitioner is imprisoned" (citing Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004))).

Defendant's request for compassionate release; and (3) direct the Clerk of Court to open a corresponding civil action and docket Defendant's motion seeking home confinement as a motion for a petition of writ of habeas corpus pursuant to 28 U.S.C. § 2241, to be briefed by the parties in accordance with a separate Order that shall issue in said civil action. An appropriate Order follows.